Yes, Your Honor. Thank you. And respectfully, I would ask for a two-minute warning. I'll do my best. It's Super Bowl weekend, so two-minute warnings are appropriate. Thank you. Respectfully, this is my precious 10 minutes to tell you why the Honorable District Judge Robert Jones, in his February 11, 2021 order, was absolutely in error when he dismissed our first amended complaint based on statute of limitations and then refused to allow us to file our second amended complaint for the same reasons without addressing contents of the second amended complaint. Judge Jones made obvious mistakes in calculating the time frame for events affected by the statute of limitations. Very specifically, we filed, we asserted claims, one of which was which is a four-year statute of limitations, and several tort claims, all of which were two-year statutes of limitations. Judge Jones held that Tim Blixseth, quote, discovered those claims at the latest in 2017. Then Judge Jones said because Tim didn't file his complaint until February of 2020, the statute of limitations necessitated the dismissal of his claims. Now, the error is that the judge failed to factor in the fact that Tim filed his Federal Tort Claim Act claims on December 17, 2018, well within that two-year time frame. The law is clear that when an FDCA claim is filed, it stops the running of the statute of limitations. That's the error that was committed here. And not only were the two-year claims thrown out, but the four-year RICO claim was tossed as well. It was error also for the court in its decision to say that plaintiff, Tim Blixseth, initiated this case in February 2020. That's not true. It was initiated when he filed his FDCA claims on December 17, 2018. Now, the date of 2017 is interesting, and it was found proper by Judge Jones as the takeoff date for the commencement and running of the statute of limitations. Can I stop you for a second? I'm not sure Judge Jones's answer to this question is, at this point in 2017, he said something like at the latest. And it appears to me that at least a number of the claims I'm focusing now on the two-year claims must have accrued much, much earlier than 2017. Some of them in 2013. So even if we use the 2018 date that you propose, aren't a number of these claims time-barred? No. And they didn't accrue in 2013. Now, there were other potential parties that could have been named. But the claims advanced in the First Amendment and the Second Amendment complaint against some of the government personnel and the agencies. Those courts did not rise to the level of being actionable. That is, the claimant didn't know what was happening, didn't know who was behind it, and he did not have the full basis on which to file a complaint at that point in time. And that's why Judge Jones said, you know, he learned at the latest, you know, 2017. Now, do you need the full basis for your claim in order for it to accrue? The general law, and I think it's reflected in the FTCA cases, is that once somebody knows of his injury, that's the point when the statute of limitations begins to run. You may not know all the facts that go to it, but you've got two years or four years thereafter to, you know, to put those together and make your complaint. So a lot of your brief seems to be, I didn't know every granular detail until a certain point, and that's not what the statute of limitations cases say, is it? Your Honor, yes, it does. The statute of limitations requires that you know you've been injured and who injured you. Otherwise, you know, we fall back to some of those basic things that we learned in law school that you can't sue somebody unless you know, unless you have a so you have to know who it is that's throwing rocks at you. You have to be hit by those rocks, and then you have to be able to demonstrate that you've been damaged by that, and you have to have a constant call to action at that point. So, you know, he names a senior DOJ official, correct? And he, but I take it that his points, I didn't know that it was necessarily that official, but if he didn't know necessarily that it was that official, but he knew, and I don't, I'm not sure what the facts here show, but he knew that the agency was, you know, acting inappropriately towards him. Couldn't he just sue the agency and, you know, and the officials above that agency? I don't, I don't know that, tell me why it makes a difference whether he knew precisely the precise official and how high the alleged conspiracy went. That there were people out to get him, and had been doing various things to him over the course of years. But counsel, not just people, but the, counsel, the government, right? Not just people, vaguely, but he knew it was the government. He knew it was the IRS. He knew it was DOJ, right? Well, he didn't know that until 2017, and that's why the start-off date of 2017, found appropriate by Judge Jones, is proper, because that's when Tim first learned that his emails had been hacked, his phone calls had been monitored, the U.S. government had interfered with the administration of his taxes, there had been concealment. Was it, counsel, wasn't he told, counsel, wasn't he told in 2014 that three former top DOJ main branch officials were involved in this? You know, that, and that's interesting, you're referencing contact with a fellow named Montgomery. Right. Montgomery was a paid government's, he was a contract worker who worked for the intelligence agencies, and he told them, he did not tell him anything, as Judge Jones says in his order, he told representatives of Tim certain things, but he didn't name Attorney Brewer in any of that. There was reference to another DOJ attorney, but not Brewer. He didn't find out about that involvement until later, and furthermore, you know, it's questionable whether you can rely on... That kind of goes to my, that goes to my former top DOJ officials back in 2014, whether or not he knew necessarily that it was Brewer, why does, why does, I mean, does he, does he have to know precisely which top officials it is in order to bring the lawsuit? No, absolutely not, Judge, but what he didn't know is that they were behind certain things, and that the government was behind certain things. But counsel, that goes to, I mean, I think we're back to Judge Hurwitz's question then, is like, does he have to know the full extent of the conspiracy and the nefarious acts, the alleged nefarious acts, or does he, you know, does he have to just have a general idea about it? I thought it was more of the latter. He was involved in FOIA lawsuits at all times and is still receiving information from his FOIA complaints. He has to know sufficiently the grounds on which to advance a claim against these folks. You just can't sue somebody that's fairly high up in the DOJ without there being some repercussions. You have to proceed cautiously, and I think Judge Jones indicated by his order that that happened at least as late as 2017. So that's the tape-off point for the application of the statute of limitations. Counsel, you wanted to save a couple minutes. You've got about a minute left. I'll give you a couple minutes when the government is done. All right. May I continue that or should I wait? You want to wait? I won't give you a couple. You want to continue, I won't give you a couple minutes. So you tell me. Thanks. Ms. Lilly? Yes, good morning. Jamie Lilly on behalf of the defendants, your honors. Can you help us right at the beginning with a predicate question? What tolls, what's the relevant tolling date for the statute of limitations? The filing of the FTCA complaint or the filing of the federal court complaint? Well, the FTCA claims, the relevant date would be an administrative complaint. Those are the two-year claims or the four? Those are some of the two-year claims, yes. He has a that are not FTCA claims and those will be two-year statute of limitations and four years for his RICO claim. Okay. And as to the ones that are FTCA claims, is the RICO claim an FTCA claim? No, your honor. All right. So as to all of those, if the statute of limitations began running sometime before, two years before 2016, they would be untimely, right? That's right, your honor. Those claims, to the extent that they, please go ahead. Right. And I'm just trying to get the right dates in my mind. And as for the RICO claim, which is the only four-year one, which was not an FTCA claim, the relevant running date for the statute of limitations is when the initial complaint was filed in the district court, right? The tolling date, I'm sorry. It was untimely then. Right, right. Many injuries occurred four years before that. You can tell me why. I'm just trying to get the relevant dates in mind. Can I follow up on that? So in my head, it seems like we've got the four years for the RICO claim and the RICO claim is not affected by the administrative FTCA claim, I think. And so, and then we've got two years for the other claims, but some at least of those may have been told if they were not already late by the time they filed the FTCA claim, right? So it seems like if you go, you have to go back, essentially the way the math works, generally in order for the government to prevail here, you have to have more than two years before that FTCA claim was filed. If everything was already ready to be, sorry, the FTCA administrative claim, if you go two years back from that and it's any later than that or any earlier than that, I'm sorry, for both his RICO and his other claims, then he's late basically for everything. I'm sorry, I didn't say that very well. So because of the way that the timeline runs here, I'm not sure that Judge Jones's, Judge Jones's reliance on the 2017 date really works very well for the reasons that he's argued. Because he gets tolling from the filing of the FTCA administrative action. But only for FTCA claims. Right, right. But the other one has a four-year statute of limitations, the RICO claim. So basically, it seems like kind of 2004, the 2014 date is sort of the magic date for the government here. That if he was before 2014, if the 2014, he had enough knowledge that his clock started running on all of his claims, then I think maybe your tolling or your untimeliness argument works. But I'm not sure it works on the 2017 date. So can you To the extent that it is relevant, it's the date of the disclosure of any sort of computer crimes. Those are statutory claims subject to a two-year statute of limitations. So they were, they were untimely when filed in 2020. So as to those FTCA claims were untimely when the administrative claim was filed in 2018. Because to the extent he, you know, has alleged any harm under those claims, they arise from the tax deficiency notice in 2012. And his other statutory claims, as you mentioned, were untimely under the two-year statute of limitations because they accrued well outside the time he filed. He had to file his complaint. When did they accrue? 2014 with the Montgomery letter or when? The statutory claims, depending on the different harms, those were incurred between 2008 and 2012. And so they accrued at the time. But he makes the argument that just because if I know about the harm, but I don't know who did it to me, you also have to, I also have to know who did it to me, at least, I think, you know, whether he needs to know specifically the particular government official, but he needs to know, you know, it's one thing that to be told that you owe taxes, but if you don't know, so in theory, you're harmed at that point. But if you don't know that someone is, according to his allegations, nefariously or improperly saying you owe taxes, you have to know that, don't you, in order for the claim to start to accrue. In other words, just being told that you owe taxes isn't enough if you don't know who's doing it, generally. Your Honor, at the time of the 2012 tax deficiency notice, he had already been involved in the reopening of the tax audit, had contested that that was an improper treatment of the particular loan issue. And so he was fully aware of... Improper in what sense? Improper in the sense that, like, you know, I'm contesting my taxes because I think the IRS has just done this wrong or improper. It seems to me it'd have to be, he would have to be on notice that it was improper in the sense of somebody was sort of nefariously doing this in the government. Well, Your Honor, certainly as late as 2014, he alleges that there was DOJ interference, at which point he should have filed his RICO claim or his statutory claims in court and used the normal methods of civil discovery to determine any of the other aspects of this alleged conspiracy. But those were untimely when they were filed in 2020. So he says in his complaint he was aware of a conspiracy in 2014. That's not exactly the wording, but I think it's a fair reading of the complaint. What if he doesn't know everybody involved in the conspiracy at that point? Does the statute begin to run or must he know, must he have better knowledge of who was involved? I think this court's case in Grimmett versus Brown is really instructive. There, an ex-wife alleged that her ex-husband and his business partners were involved in a RICO conspiracy to deprive her through bankruptcy proceedings of a financial interest she obtained in his business as part of a divorce settlement. And there the court held that even though she didn't know at the time she discovered the fraud, that it was part of a pattern of RICO activity, she didn't know that the attorney for the business was the mastermind, that her claims accrued at the time she was injured by the deprivation of her financial interest in the business. So no, Your Honor, the appropriate thing for a plaintiff to do at the all of the aspects of this alleged conspiracy, the tools of civil discovery are available to him. So counsel, can I ask a follow-up to that? So let's say I allege a conspiracy. I knew about a conspiracy on a certain date involving three government officials. And then two years later, I discover there was a fourth and fifth government official. When does the statute of limitations start to run for that fourth and fifth government official that I didn't know about when I first learned of the conspiracy? Your Honor, the date of the accrual of the claim is the date that you were injured by the conspiracy or the injurious acts of that conspiracy. So even though I don't know about the fourth and fifth, the statute of limitations starts to run at the same time it would run for a one through three that I do know about? Yes, Your Honor, it's at the time of the Actually, we're all sort of playing fast and loose with the law here in a sense that your claim accrues and the statute begins to run when you're injured. There is a doctrine that says if in reasonable diligence, you couldn't have, you know, known sufficient facts in order to bring the complaint, then the statute doesn't run until that's the discovery doctrine. But here there's no doubt that this plaintiff knew of his injuries well outside the statute of limitations period. And made multiple reports of his allegations of government misconduct throughout the period described in the complaint. I'm trying to get this into some boxes in my mind, however the case comes out. So what you I guess I would call the computer fraud claim. The statute began to run no later than 2014. And for that one, it began to run no later than 2017. Is that the government's position? As we argued in our brief, no later than 2017, that the statutory computer related, but there were, he reported allegations of hacking. Right, but those were not FTCA claims. The computer, the statutory computer claims are not FTCA claims. So for all the FTCA claims, you believe fall in the first bucket, which is to say it was discovered, they were discovered no later than, the statute began to run no later than 2014. And for the, what I call the computer related claims, your position is the statute began to run no later than 2017. Yes, Your Honor. With respect to the FTCA claims, those, to the extent he's alleging concrete injuries, those appear to arrive out of the tax deficiency notice. No, I understand. I understand. Yeah, yeah. That's why I said no later than. Later than, absolutely. Then we're in agreement. Then RICO, then the RICO's third category. Well, the RICO claim in your view also began to run no later than 2014. That's correct. Because by that point he had learned of the, that there was this alleged conspiracy. Yes, Your Honor. Okay. That's helpful. I don't, it doesn't tell us how they come out, but it helps me to analyze them. We've taken you a bit over. Do you want to just sum up? No, Your Honor. If there are no further questions, we rest on our brief. Thank you. Let's give Mr. Dubeck a couple minutes. You're muted. Computers have passed me by. I wanted to make a couple of points on the heels of your questions of counsel, first and about statute limitations and all the rest. But the U.S. Supreme Court has said in many cases, and we've cited them in our briefs, but one that sticks out is Wallace versus Cato. And the court said, when you discover your injuries that you suffered and who caused them, that's when your statute of limitations begins to run, which is why we didn't view this as a tolling case where equitable tolling or equitable estoppel might come into play. Counsel, I hear you on that, and that's why I kind of ask the questions about, so the who caused them, the question in my mind is, how much do you need to know, particularly where the government's involved, on the who caused them? Because it seems like your client knew in 2014 for some of these claims that he thought there was a government conspiracy involving DOJ officials. It's not quite as clear whether he knew about Brewer at that point, but why is it not sufficient that he just knew that there was a government conspiracy involving high-ranking DOJ officials, to where he could have brought the claim and then pursued discovery? So as the record notes, Dennis Montgomery told a representative of Mr. Blixat that there had been a dinner and certain DOJ people attended that. That's not sufficient uh to to provide any kind of grounds for assertion of a claim against government officials or the DOJ. I think it's important, your honor, that the district court admitted at page seven of its order that, quote, plain of fact was that there was a thorough diligent discovery of numerous hard-fought FOIA requests, then slowly obtained proof and learning of far so. Judge Jones is recognizing that Kim is acting diligently to get to the bottom of things so he can advance his complaint, and then he talks about what happened in 2017, and that was the springboard time for the filing of the FPCA claims and others. Counsel, I think you've answered Judge Van Dyck's question, and we've taken even past the additional two so I thank counsel for their arguments, and this case will be submitted. Thank you, judges.
judges: HURWITZ, VANDYKE, Moskowitz